THE PEOPLE OF THE STATE OF NEW YORK ex rel. 1150 PARK AVE. CORPORATION, Appellant, against JOSEPH LILLY, et al., Constituting the Tax Commission of the City of New York, Respondents.

First Department, November 17, 1944.

*Leffert Holz* of counsel (*Harold M. Hoffman* with him on the brief; *Buchter, Rathheim, Abrams & Holz,* attorneys), for relator-appellant.

*Philip A. Paulson* of counsel (*Arthur H. Goldberg* and *Oscar L. Tucker* with him on the brief; *Ignatius M. Wilkinson, Corporation Counsel*), for respondents.

GLENNON, J. After giving due consideration to all the relevant factors in the record, we are of the opinion that the building values fixed at Special Term should be reduced to $20,000 for the Park Avenue building, and $5,000 for the 70th Street building.

The order so far as appealed from, should be modified by further reducing the assessments to the following amounts:

| Section | Block | Lot | Land | Building | Total |
|---|---|---|---|---|---|
| 5 | 1404 | 69 | $290,000 | $20,000 | $310,000 |
| 5 | 1404 | 68 | $31,500 | $5,000 | $36,500 |

and as so modified affirmed, with twenty dollars costs and disbursements to the relator-appellant.

MARTIN, P. J. (dissenting in part). The building values as found by Special Term reflect the real values. The side street house had been rented for the four years ending in 1940 at $3,750 per annum and it was thereafter offered at a rental of $3,000 per annum. The corner house was not offered for rent but relator's expert testified it had a rental value of not more than $10,000. What the relator did with the buildings after acquiring same is not material. On this record the two buildings had a substantial value as of the tax date. The order appealed from should be affirmed.

UNTERMYER, J. (dissenting in part). This record presents a conspicuous illustration of the paralyzing effect of overassessment on the values of real estate in contravention of the provisions of the Constitution of this State (art. XVI, § 2) that " assessments shall in no case exceed full value ".

The property is situated at the southeast corner of Park Avenue and 70th Street in the borough of Manhattan. It is somewhat irregular in size but may be described, approximately, as 60 feet on Park Avenue and 105 feet on 70th Street. On January 25, 1942, the taxable status date, the property was vacant except for two obsolete private dwellings, which together were assessed at $133,000 for the year 1942–43, reduced by the Special Term to $75,000 for that year. The land was assessed for the year 1942–43 at $361,000, reduced by the Special Term to $321,500. Accordingly, the total assessment as thus reduced, including land and buildings, amounts to $396,500. Within two weeks after the taxable status date this property admittedly was sold to the relator for a total purchase price of $75,000 in cash, after futile efforts had been made over a period of almost one year to effect a sale at a higher price. Immediately after the property was acquired by the relator, the buildings, then assessed at $133,000, were demolished in order to eliminate the necessity of paying real estate taxes on the grossly inflated valuations of these private dwellings. That these valuations were excessive is not only established by the evidence but is confirmed by the fact that the owner considered the property to be more valuable without these obsolete " improvements ". We may thus trace the first consequences of such excessive valuation in the destruction of these dwellings and the loss of all tax revenue thereon which a moderate assessment might have preserved.

The assessment upon the land which, with the buildings, was sold for $75,000 in cash, at $361,000 by the respondents and at $321,500 by the Special Term and by this court, seems to me equally excessive and even more disastrous in its effect upon real estate values. It is especially so when compared with actual sales in the vicinity from 1939 when the improvement of vacant land became impossible. In the present case, the effect of that overvaluation is reflected in the selling price. The relator does not contend, nor did his real estate expert contend, that, reasonably assessed, the property was of a value of only $75,000. On the contrary, they maintain only that the assessment on the land should be reduced to $236,000, and they correctly argue that, by such a reduction, the value of the land

would increase and become equal to the amount of that assessment.

The calculations support that theory. If the total assessment of land and buildings, amounting to $494,000, were reduced, after the demolition of the buildings, to $236,000, there would result an annual economy in taxes of, approximately, $7,500, which capitalized at the rate of 4% would add the sum of, approximately, $187,500 to the value of the property which was sold for $75,000. It would thus increase that value to, approximately, $262,500, which coincides substantially with the value contended for by the relator and its real estate expert, and is also more nearly in accord with sales of property on Park Avenue in the vicinity from 1939 to 1942.

Fairly analyzed, those sales, from March, 1939, to April, 1942 (even excluding the sale of the relator's property at $75,000), show a unit lot value of about $55,000 as contrasted with the respondents' unit lot valuation of $105,000, and the court's valuation of $85,700. In arriving at such a valuation, the respondents were constrained to rely principally on sales in areas remote from the property here under consideration throughout years anterior to 1939, when, as they concede in their brief, it became necessary for the owner to " carry the property for several years and pay taxes, all without receiving any return on its investment, while awaiting the indeterminable distant date when construction could be commenced:" " Under such circumstances," their brief continues, " it is understandable why the subject premises brought only $75,000 in cash." I fail to understand why the same . circumstances should be excluded from consideration in appraising the same property for the purpose of taxation. Giving due weight to all those considerations, the relator's unit lot valuation of $65,000 for the Park Avenue frontage should have been accepted by the court.

I appreciate the futility of this dissent on a question of fact which is probably not subject to further review, but I cannot refrain from expressing my opposition to an assessment which is in disregard of all realities in relation to a subject in which a perception of realities is a consummation devoutly to be wished. It must always be remembered that such overassessment for the purposes of taxation results in the depression of real values which, soon or late, produces a condition in which, as demonstrated in the present case, the disparity between real and imaginary values cannot be maintained.

I, accordingly, dissent to the extent that the Special Term valuation of the land is affirmed and vote to reduce that valuation to $236,000.

TOWNLEY and DORE, JJ., concur with GLENNON, J.; MARTIN, P. J., and UNTERMYER, J., dissent in part in separate opinions.

Order so far as appealed from, modified by further reducing the assessments to the following amounts:

| Section | Block | Lot | Land | Building | Total |
|---------|-------|-----|------|----------|-------|
| 5 | 1404 | 69 | $290,000 | $20,000 | $310,000 |
| 5 | 1404 | 68 | $31,500 | $5,000 | $36,500 |

and as so modified affirmed, with twenty dollars costs and disbursements to the relator-appellant. Settle order on notice.